**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRENNAN M. GILMORE, | |
| Plaintiff, | Civil Action No. 21-13184 (MAS) (DEA) |
| v. | **MEMORANDUM OPINION** |
| ALEXANDER E. JONES *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Movant Sebastian Murdock's ("Murdock") Motion to Quash a non-party subpoena for certain phone records. (ECF No. 1.) James Hoft ("Hoft"), a defendant in ongoing litigation in the Western District of Virginia, issued the non-party subpoena but did not oppose Murdock's Motion. Having considered Murdock's submission and the subpoena, the Court decides this matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Murdock's Motion.

I.      **BACKGROUND**

This case finds its origins in the two-day "Unite the Right" rally in Charlottesville, Virginia. Beginning on August 11, 2017, torrents of protestors and counter-protestors from across the political spectrum flooded the streets of downtown Charlottesville. By the next morning, a tense scene unfolded, featuring brandished firearms and barbs traded between protestors. The tension broke in the early afternoon when a Dodge Challenger plowed into a crowd of counter-protestors. Bedlam ensued. The impact of the car flung pedestrians into the air. A nearby

minivan struck by the Challenger collided into onlookers. Those fortunate enough to avoid the initial assault fled from a second strike—the Challenger reversed and backed into yet more pedestrians. When the carnage cleared, the fallout was grim: dozens were injured, one fatally. Officers responding to the chaos apprehended James Alex Fields Jr. as the driver of the Challenger. A jury ultimately convicted Fields of first-degree murder, malicious wounding, and hit and run, and Fields further pled guilty to 29 federal hate crime charges. Fields is currently serving two life sentences and 419 years in prison.

What does this rally have to do with this Motion? Shortly after the rally, Defendants Infowars, LLC and Alex Jones posted two videos to the Internet, portraying the rally as a false-flag operation orchestrated by Plaintiff Brennan Gilmore ("Gilmore"). (Am. Compl. ¶¶ 81, 102, 121, *Gilmore v. Jones*, No. 18-17 (W.D. Va. Apr. 24, 2018), ECF No. 29.) The videos depict Gilmore, a counter-protestor at the rally, as part of a "Soros-funded and United States government-sponsored coup beginning in Ukraine and further carried out in Charlottesville." (*Id.* ¶ 84.) The videos further suggest that Defendants had uncovered the coup after conducting "deep research," intimating that Gilmore was a "known CIA and State Department official," was "on the payroll of [George] Soros," and "formerly worked for [Barack] Obama, [John] Podesta, Hillary [Clinton], [and] the CIA." (*Id.* ¶ 104.) As a result of these videos, Gilmore sued Infowars, Jones, and others for defamation in the Western District of Virginia (the "Virginia Litigation"). (*See generally* Compl., *Gilmore*, No. 18-17, ECF No. 1.)

Now in the District of New Jersey, one of the Defendants from the Virginia Litigation, Hoft, seeks non-party discovery from Verizon in New Jersey. The subpoena seeks the phone records of Murdock, a New York-based reporter. Specifically, it seeks "[a]ll phone records, documents, and/or logs, text message documents, phone contacts, phone photos, phone media,

phone video, SUBSCRIBER INFORMATION, and CALL DETAILS for the period of March 1, 2017 through March 1, 2018 for [four phone numbers]." (Topic Decl. Ex. A, Subpoena 2, ECF No. 1-2.) Through his attorney, Hoft proffers that the phone records are necessary to show a "government/media conspiracy" between Murdock and Charlottesville officials. (Murdock's Moving Br. 2, ECF No. 1-1.) That conspiracy, according to Hoft, will serve as a defense to the defamation action in the Virginia Litigation. (*Id.*) In response, Murdock moved to quash the subpoena. (*See generally* Mot., ECF No. 1.)

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 26 defines the methods, scope, limits, and process of discovery. Rule 26(b) provides that parties may obtain discovery regarding any party's claim or defense and also that, for good cause, a court may order discovery of any matter relevant to the subject matter involved in the action. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) vests the court with the authority to limit a party's pursuit of otherwise discoverable information. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) ("Although the scope of discovery under the Federal Rules is . . . broad, this right is not unlimited and may be circumscribed." (citation omitted)). For example, a court may limit discovery where the burden or the expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C).

When dealing with a discovery subpoena, the court has the inherent authority to quash or modify that subpoena. *See* Fed. R. Civ. P. 26(c), 45. Rule 26(c)(1) provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Further, Rule 45 mandates that a court in the district where compliance occurs quash or modify a subpoena in four circumstances:

> (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> > (i) fails to allow a reasonable time to comply;
> >
> > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> >
> > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> >
> > (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). The party seeking to quash the subpoena bears the burden "of demonstrating that the requirements of Rule 45 are satisfied." *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012).

## III.   **DISCUSSION**

Murdock moves to quash the subpoena on three grounds: (1) it seeks irrelevant information; (2) it seeks information shieled by the newsperson's privilege; and (3) it seeks information that cell phone companies can rightfully refuse to produce under the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*[1] As a threshold matter, notwithstanding that the Western District of Virginia has issued the subpoena, the Court has jurisdiction over Murdock's Motion. That is so because Verizon would comply with the subpoena in New Jersey. *See* Fed. R. Civ. P. 45(d)(3) (noting that "the court for the district *where compliance is required*" can quash or modify subpoenas (emphasis added)); *Arrowhead Cap. Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14-6512, 2021 WL 411379, at *2 (D.N.J. Feb. 5, 2021) ("[S]ubsection (d)(3) of Rule 45 dictates

---

[1] Murdock has standing to challenge the subpoena because he asserts "personal and proprietary interests" in his phone records. *See Patrick Collins, Inc. v. John Does 1-13*, No. 12- 7620, 2013 WL 3466833, at *2 (D.N.J. July 10, 2013).

that a motion to quash a subpoena must be timely filed with 'the court for the district where compliance is required,' *not* with the issuing court.").

With the Court's jurisdiction certain, the Court agrees that Murdock has met his burden of demonstrating that Hoft's subpoena should be quashed. To start, the subpoena seeks irrelevant information. "Under Rule 45, 'courts have significant discretion to quash or modify a subpoena where the discovery sought is irrelevant, or compliance with the subpoena would be unreasonable or oppressive.'" *Malhan v. Grewal*, No. 16-8495, 2020 WL 6391180, at *3 (D.N.J. Nov. 2, 2020) (quoting *Biotech. Value Fund v. Celera Corp.*, No. 07-597, 2014 WL 4272732, at *1 (D.N.J. Aug. 28, 2014)). Hoft nowhere explains how these phone records, which purport to contain information about a "government/media conspiracy," will help establish a defamation defense. Outside his profession, the Court knows nothing about Murdock, including what role he played in the alleged conspiracy, what information he might have, or how he relates to the claims that Gilmore is a "deep state shill linked to George Soros." (Am. Compl. ¶ 62, *Gilmore*, No. 18-17.) The Court is not obliged to find relevance of any speculative defense; to the contrary, relevant evidence must be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Indeed, the subpoena's broad request for all phone records over the course of a year—without any subject-matter limitation—reveals just how unreasonable the subpoena is. *See Schmulovich v. 1161 Rt. 9 LLC*, No. 16-8495, 2008 WL 4572537, at *5 (D.N.J. Oct. 14, 2008) (quashing as irrelevant subpoena that did not "articulate how the [discovery sought] is relevant to th[e] litigation"); *Conforti v. St. Joseph's Healthcare Sys., Inc.*, No. 17-50, 2019 WL 3847994, at *2 (D.N.J. Aug. 15, 2019) (noting that non-party subpoenas "must meet a higher standard of relevance than subpoenas directed toward parties").

Separate from relevance, the subpoena also seeks privileged information. In New Jersey, statutory law "grants a reporter a privilege from disclosing not only sources, but any information obtained in the course of newsgathering, whether or not disseminated during the newsgathering or news reporting process." *In re Venezia*, 922 A.2d 1263, 1269 (N.J. 2007) (citing N.J. Stat. Ann. 2A:84A-21 (West 2022)). The New Jersey Supreme Court has described the statute, known as a Shield Law, as "one of the most far-reaching . . . in the country, providing the 'strongest possible protection' to the newsgathering and news reporting activities of the media." *Id.* (quoting, among other sources, *In re Schuman*, 552 A.2d 602, 605 (N.J. 1989)). Hoft has not established that his subpoena seeks information unprotected by New Jersey's Shield Law. To the contrary, the subpoena appears to seek information germane to Murdock's newsgathering activities. Especially considering the strong public policy in New Jersey of protecting this type of activity, the Court concludes that Hoft's subpoena impermissibly seeks privileged material. *See generally Schuman*, 552 A.2d at 20-30 (detailing the legislative history and strong policy rationales behind New Jersey's Shield Law).

## IV. **CONCLUSION**

The Court grants Murdock's Motion and quashes the subpoena. It will issue an order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE